### O. DE COMEAU CO., Inc., v. FRANKEL.

(Supreme Court, Appellate Term, First Department. March 22, 1916.)

SALES ☞417—BREACH OF CONTRACT—DAMAGES—EVIDENCE.

In an action by the buyer of quill (feather) refuse for refusal to deliver the monthly quantity after three months, evidence as to the market price of such refuse *held* insufficient to support judgment for substantial damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1173; Dec. Dig. ☞417.]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the O. De Comeau Company, Incorporated, against Mayer Frankel. From a judgment for plaintiff, defendant appeals. Judgment reversed, and new trial ordered.

Argued February term, 1916, before LEHMAN, WEEKS, and DELEHANTY, JJ.

William Weiss, of New York City, for appellant.

William A. McQuaid, of New York City (David Wischer, of New York City, of counsel), for respondent.

LEHMAN, J. On March 14, 1915, the plaintiff entered into a written contract with the Frankel Feather Company, per Alfred P. Frankel, for the entire production of quill refuse of the said Frankel Feather Company, for a period ending March 31, 1916, at a price of

$14 per ton of 2,000 pounds per ton. In the contract it was stated that the quantity was estimated at about 30 tons per month or less. The plaintiff received the quill refuse for about three months, and then was notified by the defendant that he did not consider himself bound by the contract and would not comply with it. It appears that the Frankel Feather Company was a trade-name of the defendant and that the contract was signed by Alfred P. Frankel, his son. The defendant denies that his son had authority to sign the contract, but the trial justice has found:

"That the contract was made by the defendant, or with his authority, or that with knowledge of the contract he ratified the same and performed the same in part, receiving the consideration for such performance."

This finding of the trial justice is well supported by competent evidence, even if we disregard completely the evidence which the plaintiff claims was erroneously admitted. I do not find, however, in the testimony, any basis for the award of substantial damages which the trial justice has made. The plaintiff attempted to show special damages by reason of a contract which he had with the Virginia-Carolina Chemical Company, but he entirely failed to lay the basis for such damages. As part of his proof, however, he showed or attempted to show that there was no market for quill waste in the city, and consequently he could give no evidence of the market value of the quill waste.

The learned trial justice, however, has found that the defendant himself has supplied this evidence by testifying that he was paying $18 a ton for quill waste. It seems to me that this finding rests upon a misunderstanding of the defendant's evidence. It appears from the plaintiff's testimony that:

"Quill waste is the refuse obtained after cleaning the feathers. The cleaned feathers are sold for a different purpose, and this quill refuse comes from the machines." "Q. Where do they get these feathers? A. They gather them from the butcher stores. They are taken to the factory and cleaned; that is, the light feathers taken out. Q. Suitable for pillows? A. Yes. Q. And that leaves feathers with the hard quill? A. Yes, sir. Q. And the dirt and refuse? A. And the dirt and refuse. Q. And it is the residue that is the subject-matter of this contract, is it not? A. Yes, sir."

From this testimony it clearly appears that the quill refuse which the defendant had agreed to sell to the plaintiff was the refuse remaining from the butcher's feathers after the defendant had cleaned the feathers and taken the light feathers out. The defendant on his cross-examination was asked the following questions and gave the following answers:

"Q. Do you know what butchers' feathers are? A. Yes. Q. Is that feather waste? A. That is not feather waste; that is regular feathers. I buy these feathers. Q. From the butchers? A. From the butchers. Q. You say you are getting $14 a ton for it now? A. I paid to-day $18 a ton, not $14. When I sell, I get for the feather waste $14 a ton. When I buy, I pay $18 a ton; 90 cents per 100 pounds feathers."

It seems to me quite clear that, when we read the defendant's testimony in the light of the plaintiff's testimony describing the business, the defendant testified, not that he was paying $18 a ton for quill

waste, but that he was paying $18 a ton for butchers' feathers, and that thereafter he received $14 a ton for the waste from the butchers' feathers.

Inasmuch as this is the only evidence in the case upon the market price of quill waste, it follows that the judgment should be reversed, and a new trial ordered, with $30 costs to appellant to abide the event. All concur.